UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | No. 1:16-cr-10165-MLW-6 |
| **DENNIS PLEITES RAMOS,**<br>    **Defendant.** | |

**DEFENDANT'S MOTION FOR CONSIDERATION FOR ENTRY INTO
THE RISE PROGRAM AND TO SCHEDULE A RULE 11 HEARING**

The defendant, Dennis Pleites Ramos ("Ramos"), by and through undersigned counsel, hereby respectfully moves this Honorable Court to consider him for placement into the RISE program. As grounds therefor, Ramos avers and states as follows:

1. On June 8, 2016, Ramos was indicted for one (1) count of conspiracy to willfully engage in the business of dealing in firearms. Ramos was not charged in any other counts set forth in the indictment, other than in the firearm forfeiture allegation. *See* ECF # 3.

2. Ramos was arrested the following day, June 9, and entered his initial appearance before Magistrate Judge Donald L. Cabell. He was arraigned on June 29 and subsequently released on conditions on July 1 following a detention hearing. The conditions of Ramos' release included, *inter alia*, no unlawful use or possession of a controlled substance, random drug screening and participation in an inpatient or outpatient substance abuse program as directed by U.S. Pretrial Services. *See* ECF # 64.

3. On January 11, 2017, a summons issued for Ramos' arrest due to violations of the terms of pretrial release. A hearing was held on January 25, 2017 on these violations. According to USPO Thomas O'Brien, Ramos has tested positive for either opiates,

cannabis, or both approximately 4-5 times. USPO O'Brien also advised the Court (Kelly, M.J.) that there were additional positive tests not referenced in the report he authored. USPO O'Brien further indicated that Ramos had also admitted to him the day before the violation hearing that if he were tested on the day of the hearing, he would likely test positive for opiates again. This was *the first* undersigned counsel was made aware of a substance abuse issue.

4. Ramos also acknowledged in court that he has been struggling with an opiate addiction for approximately one (1) and a half years. He advised this addiction began after he was stabbed in the back and was treated with Percocet for pain management.

5. During the course of the violation hearing, USPO O'Brien expressed genuine concern for Ramos' well-being. As a result, the Court ordered Ramos to make arrangements via Pretrial Services for inpatient substance abuse treatment at the Spectrum House, and to abide by all requirements imposed by Spectrum House while undergoing treatment.

6. On March 3, 2017, Ramos was returned to court for an initial appearance on a Revocation of Pretrial Release for failure to remain at Spectrum House beyond twenty-one (21) days [fourteen (14) days of which had been for detoxification], despite additional conditions which required his completion of the presumed sixty (60) plus day inpatient program. According to Probation, Ramos walked away from the Program without speaking with, or obtaining permission to leave from, Probation.

7. A detention hearing on the revocation was held before this Honorable Court on March 7, 2017. The Government moved for detention and Probation agreed; undersigned counsel requested that the defendant be given a second chance at treatment since (as Ramos informed the Court, himself) he walked away over concerns about what he said was open

and obvious drug use at Spectrum House, and because he wanted to pursue Vivitrol treatment on his own initiative. At the conclusion of the hearing, this Court "took the matter under advisement," pending a further proposal from Probation (and an opportunity for undersigned counsel and Probation to confer); the defendant was ordered detained in the interim.

8. As per this Honorable Court's suggestion, Probation and undersigned counsel conferred together by telephone. Probation stated it had researched alternatives to Spectrum House and had several in mind, but was not willing to seek placement and make any recommendations without assurances that Ramos would fully commit to reenrollment in an inpatient program. Probation asked undersigned counsel to speak with Ramos personally to gauge his willingness/commitment to try again. Undersigned counsel traveled to Plymouth County House of Corrections on March 15, 2017, for this purpose and reported back to Probation that Ramos "is willing to commit" to inpatient treatment again and is "sincere" about doing so.

9. Ramos was returned to court on March 28, 2017, at which time Probation informed this Honorable Court it had secured space at Gavin House in South Boston, a community-based presumptive six (6) months program from where Ramos will eventually be able to return to work while continuing treatment. On Probation's recommendation, this Honorable Court then ordered Ramos' release on the specific conditions that he, *inter alia*, immediately enroll at Gavin House and remain in the program through completion, and also participate in any "step-down" program(s) as further recommended by Probation. The Court also advised the defendant to contact Probation and/or undersigned counsel if he has any issues/problems with the Program instead of unilaterally walking-

away or disassociating from the Program. Ramos was warned failure to adhere to the Court's conditions would result in his immediate return to court and (certain) detention.

10. Ramos meets all of the necessary criteria for entry into the RISE program: (1) he is on pretrial release; (2) he has a serious history of substance abuse as officially reflected in the January 2017 report authored by USPO O'Brien, which likely contributed to the offense conduct at issue here; (3) he has no criminal history or anything in his pending charges which would make him ineligible for the program; and (4) his participation in the alleged overall conspiracy was limited; minor role.

11. Further, undersigned counsel submits Ramos is an ideal candidate for the program. He not only has no disqualifying prior convictions on his criminal record for entry into the program, he has no prior convictions whatsoever. That Ramos is 22 years old with no prior record, who wound up charged with a serious federal offense at the height of an acknowledged opiate addiction, strongly suggests that with the kind of structured supervision, civic engagement, and employment opportunities afforded by the RISE program, he will be able to fully and completely turn his life around for the better.

12. Ramos has been made fully aware of the terms and conditions of the RISE program, as well as what is necessary for him to do before entry into the program, and he welcomes the opportunity with open arms.

13. Undersigned counsel acknowledges there is potentially one (1) disqualifying issue, namely that a request for consideration for entry into the RISE program was not made within ninety (90) days of his arraignment (which would have been in late September). However, Ramos respectfully requests this Court consider him for entry into the program, notwithstanding the lateness of the instant filing, for the following reasons:

a. First, the RISE Program memorandum ("the memorandum") by U.S. Pretrial Services, which sets the ninety (90) day filing deadline, "is not meant to be construed as law, statute or regulation" and is instead "meant to be a tool for District Judges in the exercise of their broad discretion in addressing supervision and sentencing matters."

b. Second, the memorandum notes that an exception to the ninety (90) day deadline is available where, as here, there is a "delay in receipt of substantial automatic discovery materials" since "the defendant must also receive a reasonable period of time to evaluate the discovery."

c. Third, as stated above, undersigned counsel was not made aware of Ramos' opiate addiction until he received on January 11, 2017, notice of Probation's petition for a violation hearing; indeed, truly not until the defendant acknowledged it in open count on January 25, 2017. Undersigned counsel acknowledges that for the aforementioned exception to the ninety (90) day deadline to apply, a motion to enlarge the time to file a motion for RISE consideration must be made within the ninety (90) day period. However, undersigned counsel was in no position to make such a motion without any knowledge of the opiate addiction; he respectfully suggests that the date of this motion is within ninety (90) days of him becoming aware of the defendant's substance abuse issue(s). Accordingly, undersigned counsel has endeavored to move for RISE consideration as expeditiously as possible now that he has been made aware of the problem.

14. Based on all of the foregoing, Ramos respectfully submits that entry into the RISE program is what he needs to help him get back on track, and is therefore in the best interests of justice.

15. Undersigned counsel has conferred with counsel for the government, AUSA Michael Crowley, who assents to the scheduling of a Rule 11 hearing, as well as for Ramos' entry into the RISE program.

WHEREFORE, the defendant respectfully requests this Honorable Court consider him for placement into the RISE program and to schedule a Rule 11 hearing.

Dated: March 28, 2017

Respectfully submitted,
DENNIS PLEITES RAMOS
By and through his attorney,

 /s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
10 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel.: (857) 991-1945
Fax: (857) 265-3184
brad@bradbaileylaw.com

**Certificate of Service**

I, R. Bradford Bailey, hereby certify that on this the 28th day of March, 2017, I caused a true copy of the foregoing motion to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

 /s/ *R. Bradford Bailey*
R. Bradford Bailey